IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

UNITED STATES OF AMERICA          )
                                  )
            v.                    )          CR 104-059
                                  )
CHARLES W. WALKER, SR.            )
YOLANDA MONIQUE WALKER            )
THE CWW GROUP, INC.               )
GEORGIA PERSONNEL SERVICES, INC.) 
THE AUGUSTA FOCUS, INC.           )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

In the above-captioned criminal case, the government brings a 142 count indictment,

in which Defendants are variously charged in two conspiracy counts, substantive mail fraud

counts related to the charged conspiracies, multiple counts of making a false tax return, and

multiple counts of aiding and assisting in the preparation of a false and fraudulent charitable

corporation's tax return. The matter is now before the Court on the "Motion to Dismiss

Counts 41-49 (The Grady Counts), Counts 50-69 (Medical College of Georgia Counts) and

Counts 70-81 (Political Campaign Counts)." (Doc. no. 44). The Court held an evidentiary

hearing on the matter. Now, for the reasons developed more fully herein, the Court

**REPORTS** and **RECOMMENDS** that the motion to dismiss be **DENIED**.

## I.      BACKGROUND

As set forth at page 8 of the indictment, Defendants allegedly devised and

participated in five related schemes to defraud; the current motion to dismiss challenges only

85.

the following three charged schemes:

II. CHARLES WALKER'S SCHEME TO DEFRAUD INVOLVING GRADY MEMORIAL HOSPITAL: Counts 41 through 49, (Pages 19-25).

III. CHARLES WALKER'S SCHEME TO DEFRAUD INVOLVING THE MEDICAL COLLEGE OF GEORGIA: Counts 50 through 69, (Pages 26-33).

IV. CHARLES WALKER'S SCHEME TO DEFRAUD INVOLVING HIS POLITICAL CAMPAIGN ACCOUNT: Counts 70 through 81, (Pages 33-40).

As it relates to these three schemes, the indictment explains that as a state senator, Charles Walker served as Senate Majority Leader and presided over numerous key committees, including Appropriations and Health and Human Services. As Senate Majority Leader, he was also one of six members of the Budget Conference Committee. The indictment alleges that Charles Walker was the 100% owner, president, and chief executive officer of The CWW Group, Inc., doing business as The Walker Group, which included both Georgia Personnel Services and the Augusta Focus. (Doc. no. 1, pp. 2-3). The indictment further explains that Charles Walker had "a general fiduciary duty to give the public his honest services, free from any corruption, dishonesty, bias, partiality, willful omission, conflict of interest, or fraud." (Id. at 5). He also "had a duty not to misuse his public office for his own private gain." (Id.). Moreover, the indictment explains that the State of Georgia has several statutes to which Charles Walker, as an elected official, is subject, including the "Code of Ethics for Government Service" (O.C.G.A. § 45-10-1 et seq.) and the Ethics in Government Act (O.C.G.A. § 21-5-1 et seq.). (Id. at 5-6).

As to the scheme involving Grady Memorial Hospital, Charles Walker is alleged to have violated his fiduciary duty and misused his public office for private gain "by soliciting new business for his temp agency from Grady Memorial Hospital in exchange for his help with legislation affecting Grady and other hospitals. In other words, **WALKER** made his official decisions based on his own self-interest and received personal benefits as a result of this undisclosed conflict of interest." (Id. at 6). The indictment further alleges that contrary to his duty to the public to make governmental decisions in the public's best interest, Charles Walker:

> instead secretly made such official decisions based on his own self-interest in receiving undisclosed business favors and remuneration from Grady Memorial Hospital, (hereinafter "Grady Hospital," or "Grady"), in exchange and in return for his help and support of legislation beneficial to the hospital. Specifically, it was expected and understood by **WALKER** that Grady would use his temp agency in exchange for access to **WALKER** and his help in the General Assembly.

(Id. at 21).

Moreover, Charles Walker, The Walker Group, Georgia Personnel Services, and the Augusta Focus are alleged to have devised and participated in a similar scheme to defraud the Medical College of Georgia. Specifically, the indictment states,

> **WALKER** also misrepresented to M.C.G., (the state Medical College of Georgia), executives, on different occasions, that he was not the owner of **GEORGIA PERSONNEL** or the **AUGUSTA FOCUS**, in order to circumvent Georgia's conflict of interest statute which prohibits state politicians from transacting business with state entities. At the same time, **WALKER** also continued his pattern of deceit and concealment of his business interests by purposely failing to disclose his business transactions with M.C.G. in his annual business transaction disclosure reports.

(Id. at 6-7). The indictment goes on to allege that Charles Walker improperly transacted

3

business with a state entity, M.C.G., and then misled the public, on disclosure forms required by the State of Georgia, that he had not transacted any business with any state entities. (Id. at 27-28). The indictment also notes that M.C.G., as a state medical college, depended on the General Assembly for legislation concerning its funding and operation. (Id. at 28).

As to the third scheme challenged in the current motion, the indictment alleges that "**WALKER** also fraudulently used his political campaign account for personal expenditures and failed to make full and accurate disclosures of such expenditures in his campaign contribution disclosure reports." (Id. at 7). According to the indictment, "[a]s a political candidate for re-election, **WALKER** had a fiduciary duty, to his donors and to the public, to properly spend campaign funds, as required, only on legitimate campaign expenses, and to make true and accurate disclosures to the public of all campaign expenditures on all state-mandated campaign disclosure reports." (Id. at 36). However, the indictment alleges that Charles Walker funneled money from his campaign account to help pay for his gambling debt at the Trump Plaza Casino, for a gambling trip to Stateline, Nevada, for personal expenses of a close friend's girlfriend, for condominium fees, for money orders for his nephews, and for the rent and a car of two nieces. (Id. at 36-40). According to the indictment, the alleged improper use of the campaign funds described above, along with a failure to "fully and accurately disclose all expenditures on his campaign contribution disclosure reports" and a failure "to disclose his fiduciary position in his newspaper," "deprived the public of the intangible right to [Charles Walker's] honest services." (Id. at 40).

All of the challenged counts are based on allegations of mail fraud that are brought pursuant to 18 U.S.C. §§ 1341 and 1346. Title 18 U.S.C. § 1341 prohibits the use of the mail for "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses. . . . " Title 18 U.S.C. § 1346 clarifies that "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."

## II. DISCUSSION

According to Defendants, the Grady Counts (41-49) should be dismissed because they are vague and duplicitous, because they violate the basic tenets of federalism, and because § 1346 is both inherently vague and vague as applied in these counts. Defendants go on to argue that the Medical College of Georgia ("M.C.G.") and Political Campaign Counts (50-69 and 70-81, respectively) should be dismissed because they, too, are premised on vague allegations and the "inherently vague" § 1346; Defendants also re-urge a federalism argument as to these counts.

### A. The Grady Counts

#### 1. Sufficiency of Allegations in the Indictment

Fed. R. Crim. P. 7(c)(1) requires that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." In the Eleventh Circuit, an indictment is sufficient if it: "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." United States v. Steele, 178 F.3d 1230,

1233-34 (11th Cir. 1999) (citation omitted); see also United States v. Cole, 755 F.2d 748, 759 (11th Cir. 1985) (finding that an indictment satisfies constitutional requirements by informing a defendant of the charges against him and enabling the defendant to plead double jeopardy in case of future prosecution for the same offenses ). The validity of an indictment must be determined by "reading it as a whole, giving practical effect to its language." United States v. Silverman, 745 F.2d 1386, 1392 (11th Cir. 1984) (citation omitted) (emphasis added). As courts have noted, "[f]acial sufficiency is not a high hurdle." United States v. Bates, 96 F.3d 964, 970 (7th Cir. 1996); see also Silverman, 745 F.2d at 1392 ("The accusation must be legally sufficient, i.e., it must assert facts which in law amount to an offense and which, if proved, would establish prima facie the accused's commission of that offense.").

Moreover, an indictment will generally be held to be sufficient if it "sets forth the offense in the words of the statute itself, as long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished." Bates, 96 F.3d at 970; see also United States v. Bascaro, 742 F.2d 1335, 1348 (11th Cir. 1984) ("Those requirements [for an indictment to pass constitutional muster] are satisfied by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime."). Importantly, however, "[a]n indictment not framed to apprise the defendant with reasonable certainty of the nature of the accusation against him '. . . is defective, although it may follow the language of the statute.'" United States v. Gordon, 780 F.2d 1165, 1171 (5th Cir. 1986) (citing United States v. Simmons, 6 Otto (96 U.S.) 360, 362, 24 L.Ed. 819, 820 (1877)). Nevertheless, an indictment need not "allege in detail the factual

6

proof that will be relied on to support the charges." United States v. Smith, 230 F.3d 300, 306 (7th Cir. 2000); see also Bates, 96 F.3d at 970 ("Indictments need not exhaustively describe the facts surrounding a crime's commission nor provide lengthy explanations of the elements of the offense."). Thus, the government is neither required to "set forth evidence or details of how a crime was committed," nor required to "prove its case" in an indictment. United States v. Triumph Cap. Group, Inc., 260 F. Supp.2d 444, 448 (D. Conn. 2002) (citing United States v. Carrier, 672 F.2d 300, 303-04 (2d Cir. 1982) and Costello v. United States, 350 U.S. 359, 363 (1956)). Accordingly, "a technically sufficient indictment is not subject to dismissal on the basis of factual questions, the resolution of which must await trial." Id. (internal citations and quotation marks omitted).

The Court turns first to the argument that the Grady Counts are composed of "a random assortment of facts," also referred to as "a panoply of nefarious deeds," that fail to allege the operative facts of the crimes alleged. (Doc. no. 82, Hearing Tr., p. 45 (hereinafter "Tr."); doc. no. 44, p. 4). Defendants acknowledge that the indictment states the relevant statutory language under which they are charged, but they argue that it is not sufficient to charge the relevant code sections and then merely "paint a picture of honest services fraud." (Tr., p. 46). Looking only to the language stated on the pages of the indictment devoted exclusively to Counts 41-49, Defendants argue that the Grady Counts do not allege a *quid pro quo* agreement, or any type of corrupt agreement for that matter, between Charles Walker and anyone at Grady. Defendants also allege that the indictment fails to identify the respective victims of the various types of mail fraud alleged. (Doc. no. 44, p. 4). In a nutshell, according to Defendants, when the allegations are viewed one by one, in isolation

7

from each other and from the General Allegations in Part One of the indictment, and when Defendants' suggested inferences are drawn from the facts contained in those individually-viewed allegations, the requirements of Rule 7 are not met because the indictment "fails to clearly set forth the criminal conduct." (Id. at 7; Tr., pp. 44-51).

However, as the government points out, the allegations in the indictment are not properly viewed in isolation: "When viewed together, they paint a clear and concise picture of a scheme in which Defendant-Walker deprived his constituents of the right to his honest services by failing to disclose a material conflict of interest and by making decisions based on his own self-interest, not the best interest of the public he was serving." (Doc. no. 55, p. 20). Moreover, the General Allegations in the indictment, portions of which are specifically incorporated into the Grady Counts, outline the agreement that Defendants claim is missing. The indictment states that "in exchange for his help with legislation affecting Grady and other hospitals," Charles Walker "misused his public office by soliciting new business for his temp agency from Grady Memorial Hospital."[1] (Doc. no. 1, p. 6 (emphasis added)). That is, Charles Walker is alleged to have "made his official decisions based on his own self-interest and received personal benefits as a result of this undisclosed conflict of interest." (Id.).

---

[1]The Court also notes that a *quid pro quo* agreement is not the only way to show a deprivation of honest services. See United States v. Lopez-Lukis, 102 F.3d 1164, 1167 (11th Cir. 1997) (discussing § 1346 charge and stating, "If the official instead secretly makes his decision based on his own personal interests--as when an official accepts a bribe or personally benefits from an undisclosed conflict of interest--the official has defrauded the public of his honest services.").

Concerning the argument that the indictment does not identify the respective victims of the various types of mail fraud alleged, that, too, is discredited when the General Allegations and the allegations specific to the Grady Count are considered together. The victims are Charles Walker's constituents, who are alleged to have been defrauded by their state senator acting in his own personal interest rather than theirs; the indictment also alleges that Grady Hospital was pressured into hiring Charles Walker's temporary service workers in exchange for his help with legislation that impacted Grady and other hospitals, thereby defrauding Grady of money to which Defendants were not entitled.[2]

According to Eleventh Circuit precedent, "[t]o establish a violation of sections 1341 and 1346, the Government must prove that the defendants '(1) intentionally participated in a scheme or artifice to defraud and (2) used the United States mails to carry out that scheme or artifice.'" United States v. Lopez-Lukis, 102 F.3d 1164, 1168 (11th Cir. 1997). Moreover, the "crux of this theory [of § 1346 honest services fraud] is that when a political official uses his office for personal gain, he deprives his constituents of their right to have him perform his official duties in their best interest."[3] Id. at 1169. Of course, at this point in the proceedings, the government need only allege that Defendants carried out such actions. That, the indictment does. The government need not, as Defendants' motion in substance argues, prove its case in the indictment. Stated differently, Defendants launched "a

---

[2]As discussed in more detail in Part II.A(2), *infra*, the indictment is not defective simply because there may have been a second objective (beyond the alleged misuse of Charles Walker's public office) to the fraud at Grady.

[3]More specific parameters of activities covered by § 1346 are discussed in Part II.A(3), *infra*.

9

premature attack[] on the sufficiency of the government's evidence." Triumph Cap. Group, Inc., 260 F. Supp.2d at 452. However, as the Eleventh Circuit recently explained:

> The district court's supervisory authority to dismiss indictments cannot be anchored to a kind of criminal summary judgment procedure. We recognize that our system of criminal procedure may result in legally meritless cases being sent to trial, but absent further legislative direction, it is not for the courts to filter which criminal cases may reach the trial stage by reviewing the proffered evidence in advance.

United States v. Salman, 378 F.3d 1266, 1268-69 (11th Cir. 2004); see also United States v. Stickle, 355 F. Supp.2d 1317, 1329 (S.D. Fla. 2004) ("The sufficiency of a criminal indictment is determined on its face. . . . Because the Defendants are properly indicted, the Government is entitled to present its evidence at trial and have its sufficiency tested by a motion for acquittal pursuant to F. R. Crim. P. 29." (citations omitted)).

In sum, the language of the indictment presents the essential elements of the charged offenses, in the language of the relevant statutes, and puts Defendants on notice that they have been charged with mail fraud as outlined in §§ 1341 and 1346. They have also been put on sufficient notice of the charges against which they are expected to defend themselves. While the inferences to be drawn from the allegations in the indictment will undoubtedly present hotly contested factual issues at trial, a recommendation for dismissal as a matter of law at this pre-trial stage would be premature.

### 2. Duplicity

In a related argument, Defendants contend that because the indictment contains an amalgam of "unidentified victims, unidentified perpetrators and several schemes to defraud all mixed in the same stew," there is a danger that jurors may convict without agreeing on

which facts authorize a verdict. (Doc. no. 44, p. 12). Although the duplicity argument is but one paragraph, it appears that Defendants are arguing that because the Grady Counts allege a scheme to deprive Charles Walker's constituents of their right to his honest services and a scheme to defraud Grady, there is a chance that the jurors could return a guilty verdict even if they are not in agreement as to which scheme was carried out. The government counters that the Grady Counts are more properly construed as describing only one scheme that has two separate objectives. (Doc. no. 55, p. 28).

"A count in an indictment is duplicitous if it charges two or more 'separate and distinct' offenses." United States v. Schlei, 122 F.3d 944, 977 (11th Cir. 1997) (citation omitted). Duplicitous counts are problematic for three main reasons: a jury may convict a defendant without unanimous agreement on the same offense; a defendant may suffer prejudice in a subsequent double jeopardy defense; and a court may find it difficult to rule on the admissibility of evidence. Id. Nevertheless, if a penal statute provides for multiple methods of completing the same criminal offense and provides the same punishment for each, "the indictment may charge any or all of the acts conjunctively, in a single count, as constituting the same offense, and the government may satisfy its burden by proving that the defendant, by committing any one of the acts alleged, violated the statute." United States v. Burton, 871 F.2d 1566, 1573 (11th Cir. 1989) (per curiam); see also United States v. Cornillie, 92 F.3d 1108, 1110 (11th Cir. 1996) (per curiam) ("Where the language of a statute proscribes several means by which the defendant might have committed a violation, the government may plead the offense conjunctively and satisfy its burden of proof by any one of the means." (citation omitted)). In other words, "[a]n indictment is not duplicitous

11

if, in one count, it charges a defendant with violating [a] statute in [multiple] ways." Burton, 871 F.2d at 1574.

Here, whether the Grady Counts are construed to allege one scheme with two separate objects - to defraud constituents of the right to Charles Walker's honest services and to defraud Grady of money to which Defendants were not entitled (by using his political influence to help or hurt Grady's legislative interests depending on its decision to use his temporary service workers)- or are construed to allege two separate schemes to defraud, there is no duplicity problem.[4] The mail fraud statute is a penal statute which "prescribes several alternative ways in which the statute may be violated and each is subject to the same punishment." Burton, 871 F.2d at 1573. Thus, "the government may plead the offense conjunctively and satisfy its burden of proof by any one of the means."[5] Cornillie, 92 F.3d

---

[4]In a similar case, the Fifth Circuit rejected an argument that counts were duplicitous because they alleged more than one scheme to defraud. In United States v. Caldwell, 302 F.3d 399 (5th Cir. 2002), the indictment alleged a scheme to defraud Mississippi tax payers and others of their money and alleged a scheme to defraud the defendant's employer of its right to honest services. Id. at 407-08. Rejecting the argument that the allegation of multiple schemes resulted in a duplicity problem, the court reasoned that the indictment alleged only one scheme that had two separate objects. Id. at 408. Moreover, the court concluded that even if the government had alleged multiple schemes, "where a mail fraud count alleges only one instance of the use of the mail in furtherance of multiple schemes (or a single scheme with multiple objects)," a defendant can be found guilty of only one mail fraud offense on that count. Id. That is, regardless of the number of schemes associated with the particular use of the mail charged, when a count charges one particular use of the mail, a defendant can only be convicted of only one mail fraud offense for that count. Id.; see also Sanabria v. United States, 437 U.S. 54, 66 n.20 (1978) ("A single offense should normally be charged in one count rather than several, even if different means of committing the offense are alleged.").

[5]As the government argued at the hearing, this amounts to a situation of indicting in the conjunctive and offering proof in the disjunctive. Tr., p. 65. "As long as one of the schemes violates the statute that is sufficient if there is sufficient evidence at the trial to prove that the statute was violated." Id.

at 1110. Moreover, each of the Grady Counts alleges only one instance of the use of the mail to further any scheme.

Finally, any remaining concerns about unanimity of a jury verdict can be cured by a general instruction to the jury that its verdict must be unanimous on whatever specification the jurors find to be the predicate of a guilty verdict. United States v. Natelli, 527 F.2d 311, 325 (2d Cir. 1975); see also Schlei, 122 F.3d at 980 (finding unanimity instruction to jury could have cured risk that jury improperly convicted defendant without unanimous agreement on which of multiple transactions formed basis for conviction); United States v. Shorter, 809 F.2d 54, 56-58 (D.C. Cir. 1987) (affirming that when two or more acts would constitute an offense standing alone, those acts may instead be charged in a single count if those acts could be characterized as part of a single, continuing scheme), *abrogated on other grounds by*, Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 585 (1993).

### 3.    Constitutionality of § 1346

According to Defendants, 18 U.S.C. § 1346 is an inherently vague statute that, as applied to the Grady Counts, is a particularly galling intrusion on the relationship between Charles Walker and his constituents or any other citizen of Georgia. Although Defendants make a single, passing reference to the First Amendment, their § 1346 claim is, in actuality, an "as applied" challenged.[6] Defendants have succinctly summarized their argument on this

---

[6]Defendants mention the First Amendment in one sentence in their brief, "Moreover, because this case involves issues of federalism . . . as well as First Amendment issues (a politician's activities in both the legislature and his political party), this court's review . . . ." (Doc. no. 44, p. 3). Absent any elaboration with legal or factual arguments, Defendants have abandoned this portion of their argument. Denney v. City of Albany, 247 F.3d 1172, 1182 (11th Cir. 2001) (deeming claim abandoned where there is "a single reference in [the] brief," but no legal or factual arguments are made to develop issue); Greenbriar, Ltd. v. City

point as follows:

> To apply § 1346 in this situation would convert the federal mail fraud statute into a federal ethics or misbehavior statute that empowers the federal prosecutors to oversee and regulate the conduct of all state employees in their affairs (both private and public) and to subject them to some standard of conduct that is not set forth in any criminal code in either the federal or state statutes.

(Doc. no. 44, p. 9). The government counters that since § 1346 was enacted, "the Eleventh Circuit (and virtually every other circuit) has consistently held that the concealment of a financial interest held by a public officer in a matter coming before him in his official capacity represents a paradigmatic case of honest services fraud"; moreover, the Eleventh Circuit has ruled on numerous "occasions that the specific intent requirement for proving honest services mail fraud is sufficient to defeat claims of vagueness." (Doc. no. 55, pp. 22, 23 (citing United States v. Paradies, 98 F.3d 1266, 1282-83 (11th Cir. 1996) and United States v. Waymer, 55 F.3d 564, 568 (11th Cir. 1995)).

The defendant's argument in Waymer concerning the constitutionality of § 1346 bears a striking resemblance to Defendants' argument in this case, and therefore, the Court follows the analytical framework set forth in that case:[7]

---

of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (failing to elaborate argument in brief resulted in waiver of claim).

[7]In Waymer , the defendant made a void-for-vagueness argument about § 1346 that is similar to Defendants' argument in this case. Notably, the vagueness challenge in Waymer did not involve the First Amendment, resulting in a review of § 1346 only as applied on the facts of the particular case. See also United States v. Rybicki, 354 F.3d 124, 130-31 (2d Cir. 2003), cert. denied, 125 S. Ct. 32 (U.S. Oct. 4, 2004) (collecting cases supporting proposition that when interpretation of constitutionality of statute does not implicate First Amendment rights, vagueness challenge considered only on "as applied" basis). As the instant case likewise does not involve a First Amendment challenge (see note 6, supra), this Court, too,

The constitutionality of a vague statutory standard is closely related to whether the standard incorporates a requirement of *mens rea*. Colautti v. Franklin, 439 U.S. 379, 395, 99 S. Ct. 675, 685, 58 L. Ed.2d 596 (1979). "A statutory requirement that an act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain. But it does relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware." United States v. Conner, 752 F.2d 566, 574 (11th Cir.) (quoting Screws v. United States, 325 U.S. 91, 101-02, 65 S. Ct. 1031, 1035-36, 89 L. Ed. 1495 (1945) (Douglas, J., concurring)), *cert. denied sub nom.*, Taylor v. United States, 474 U.S. 821, 106 S. Ct. 72, 88 L. Ed.2d 59 (1985); see also United States v. Margiotta, 688 F.2d 108, 129 (2d Cir. 1982) ("[t]he broad language of [section 1341], intended by Congress to be sufficiently flexible to cover the wide range of fraudulent schemes mankind is capable of devising, is not unconstitutionally vague because section 1341 contains the requirement that the defendant must have acted willfully and with a specific intent to defraud."), *cert. denied,* 461 U.S. 913, 103 S. Ct. 1891, 77 L. Ed.2d 282 (1983).

Waymer, 55 F.3d at 568; see also United States v. Hasner, 340 F.3d 1261, 1269 (11th Cir. 2003) (*per curiam*) (recognizing importance of *mens rea* requirement to providing notice of possible criminal liability under § 1346).

Here, as to the Grady Counts, the indictment alleges that "in exchange for his help with legislation affecting Grady and other hospitals," Charles Walker "misused his public office by soliciting new business for his temp agency from Grady Memorial Hospital"; moreover, the indictment alleges that Charles Walker is alleged to have "made his official decisions based on his own self-interest and received personal benefits as a result of this undisclosed conflict of interest." (Doc. no. 1, p. 6). Thus, the indictment alleges that Charles Walker acted with the intent to defraud his constituents of his honest services by making choices based on his own personal interest rather than theirs and with the intent to pressure

---

will only examine the void-for-vagueness argument in light of the facts of this case. See Waymer, 55 F.3d at 568.

Grady Hospital into hiring his temporary service workers in exchange for his help with legislation that impacted Grady and other hospitals, thereby defrauding Grady of money to which Defendants were not entitled. Thus, while it remains to be seen whether the government's evidence will bear out these allegations, § 1346 is not vague as applied to the Grady Counts.[8]

In sum, Defendants have not shown that the Grady Counts should be dismissed.[9]

## B.    The M.C.G. and Political Campaign Counts

Defendants next turn their sights to the M.C.G. and Political Campaign Counts. First, Defendants argue that although these counts "are different in form and substance from the

---

[8]Defendants' argument that the statute is vague because it does not define "honest services," thereby suggesting that Charles Walker could not have foreseen that criminal liability was possible, is untenable. (Doc. no. 44, p. 10). As the Eleventh Circuit has explained, Congress enacted the § 1346 honest services fraud provision after the Supreme Court decided McNally v. United States, 483 U.S. 350 (1987). United States v. deVegter, 198 F.3d 1324, 1327 (11th Cir. 1999). "In McNally, however, the Supreme Court held that § 1346 did not prohibit schemes to deprive the public of the honest services of elected officials. Congress enacted § 1346 to reinstate the pre-McNally rule that such schemes are prohibited by the mail fraud statute." Paradies, 98 F.3d at 1283 n.30. Pre-McNally case law had recognized that [mail] fraud liability could occur based on the defrauding of three types of intangible rights, one of which included government officials depriving their constituents of honest governmental services. deVegter, 198 F.3d at 1327. Moreover, by January 6, 1997 - long before the conclusion of the schemes alleged in the instant indictment (indeed, closer to the beginning of the schemes than the end) - the Eleventh Circuit had announced that if a public official "secretly makes his decision based on his own personal interests - as when an official accepts a bribe or personally benefits from an undisclosed conflict of interest - the official has defrauded the public of his honest services." Lopez-Lukis, 102 F.3d at 1269. Thus, there is no basis for concluding that because the statute itself does not contain a definition of "honest services," Charles Walker did not have notice of what conduct is illegal under § 1346.

[9]Plaintiff's federalism argument concerning the Grady Counts - the federal government should not be involved in the regulation of state political affairs, including compliance with state ethics laws - (doc. no. 44, p. 9), is discussed in Part II. B, *infra*.

Grady Counts, many of the same vices afflict these counts as well." (Doc. no. 44, p. 12).

Notably, however, Defendants do not make a sufficiency of the indictment argument that

was made concerning the Grady Counts. Nor is there is duplicity argument made as to these

counts. Although Defendants re-iterate their belief that § 1346 is an inherently vague statute,

they provide no details for an "as applied challenge" to the M.C.G. and Political Campaign

Counts. As discussed in note 6, *supra*, failure to provide any factual or legal support for a

claim amounts to abandonment of such issues.[10]

Thus, the only remaining argument to be considered is Defendants' position that the

indictment violates the basic tenets of federalism. The federalism argument as to the M.C.G.

and Political Campaign Counts, as well as to the Grady Counts, is based on the contention

that the federal charges are based on allegations of violations of state law, resulting in an

"improper intrusion into the affairs of the state."[11]  (Doc. no. 44, pp. 9, 12-14). The

---

[10]Even if the Court were to assume that Defendants' "as applied" challenge was sufficiently raised, the claim is without merit. As the government points out (doc. no. 55, p. 30), the indictment alleges that Charles Walker made false representations to M.C.G. officials about his ownership interest in both Georgia Personnel and the Augusta Focus so that he could circumvent Georgia laws which prohibit state politicians from contracting with state agencies like M.C.G., and he then allegedly failed to note the transactions in financial disclosure forms submitted to the State of Georgia. (Id.). As to the Political Campaign Counts, the indictment alleges that Charles Walker fraudulently obtained $38,000 from his campaign account to pay gambling debts by having his newspaper, the Augusta Focus, bill his campaign for media consulting that the government contends amounted to Charles Walker billing himself for consulting with himself. (Id. at 31-32). Thus, the facts do not suggest a basis for a valid "as applied" challenge to § 1346 concerning the M.C.G. or Political Campaign Counts.

[11]Mr. Samuel succinctly summarized Defendants's argument at the hearing as follows:

If, in fact, you are going to authorize the federal Government to prosecute under the dishonest services fraud. If you are going to allow the

government responds that it is not regulating compliance with state ethics laws but is instead "regulating the use of the mails where the purpose is to defraud persons of their intangible right to honest services." (Doc. no. 55, p. 24). The government also points out that it is not required to show a violation of a state statute to establish a case of honest services mail fraud because federal, not state, law establishes the scope of Charles Walker's duty to provide honest services. Hasner, 340 F.3d 1261 at 1269; deVegter, 198 F.3d at 1329 ("The nature and interpretation of the duty owed [in an honest services § 1346 mail fraud case] is a question of federal law."); see also Waymer, 55 F.3d at 571 ("The affirmative duty to disclose material information arises out of a government official's fiduciary relationship to his or her employer, whether as a public or as a private employee." (internal quotation marks and citation omitted)); United States v. Sawyer, 85 F.3d 713, 726 (1st Cir. 1996) ("In general, proof of a state law violation is not required for conviction of honest services fraud."); United States v. Brown, 79 F.3d 1550, 1557-58 (11th Cir. 1996) (recognizing that even in absence of controlling statute, certain people must disclose facts if non-disclosure could result in harm, for example when there is a special relationship of trust).

There is no question that Congress has the power to regulate the use of the interstate mail system. Ex parte Rapier, 143 U.S. 110 (1892); United States v. Hausmann, 345 F.3d 952, 958 (7th Cir. 2003) (citing Postal Power in U.S. Const. art. I, § 8, cl. 7). Thus, a mail

_____

federal Government or allow the jury to make a decision whether it is [a] federal crime to violate state ethics laws and nothing more we contend it represents an extraordinary intrusion on the State's ability to police itself and thus violates the principles of federalism.

(Doc. no. 82, p. 57).

18

fraud count is a valid exercise of federal authority to police alleged fraudulent use of the

interstate mails. Moreover, as a sister circuit has explained:

> Without some showing that either the statutes in question or the prosecution
> of this case contravene some specific rule of constitutional or statutory law,
> the mere fact that the conduct in question is of a sort traditionally dealt with
> through state law cannot serve as a basis for dismissing [the] indictment.

Hausmann, 345 F.3d at 959.

Here, Defendants' bare assertions that the federal government should not be

concerned with violations of Georgia's disclosure laws will not suffice to justify a

recommendation of dismissal of the challenged counts of the indictment.[12] For as described

above, it is not the alleged state violations that form the basis for the federal prosecution.

Rather, it is the use of the federal mail system to carry out a fraudulent scheme upon which

the instant federal mail fraud prosecution is based. Additionally, although the government

need not prove violations of state law to secure a conviction for federal mail fraud, proof of

Charles Walker's failure to comply with state reporting requirements could provide evidence

of intent to deprive the public of honest services.[13] Waymer, 55 F.3d at 571 ("[f]raud, for

purposes of a mail fraud conviction, may be proved through the defendant's non-action or

non-disclosure of material facts intended to create a false and fraudulent representation"

---

[12]Defendants' reliance on Cleveland v. United States, 531 U.S. 12 (2000) for the
proposition that the honest services prosecution under § 1346 in the instant case violates the
tenets of federalism is misplaced in that Cleveland was not considering the issue of the
intangible right of honest services. Id. at 20 ("The question presented is whether, for
purposes of the federal mail fraud statute, a government regulator parts with 'property' when
it issues a license.").

[13]As noted in detail above, the element of intent is a significant factor in the
determination that § 1346 is not void-for-vagueness.

(internal quotation marks and citation omitted)); United States v. De La Mata, 266 F.3d 1275, 1293 n.21 (11th Cir. 2001) (noting that civil regulations requiring disclosure of insider trading may be relevant evidence concerning a defendant's knowledge and intent); United States v. Woodward, 149 F.3d 46, 62-63 (1st Cir. 1998) (failing to comply with state disclosure requirements can provide proof of intent to deceive and intent to deprive public of honest services).

In sum, Defendants have not shown that the Grady Counts, the M.C.G. Counts, or the Political Campaign Counts should be dismissed for violating the principles of federalism. The government need not prove the violation of a state reporting law to secure a mail fraud conviction, and proof of a violation of such a state statute goes to the intent element of a federal mail fraud charge.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the motion to dismiss counts be **DENIED**.

SO REPORTED and RECOMMENDED this 25th day of April, 2005, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

20

# United States District Court
## *Southern District of Georgia*

UNITED STATES OF AMERICA

        vs.

CHARLES W. WALKER, SR.

\*
\*
\*
\*
\*

CASE NO. CR104-059

The undersigned, a regularly appointed and qualified deputy in the office of this Clerk of this District, while conducting the business of the Court for said Division does hereby certify the following:

    1.    Pursuant to instructions from the court, and in the performance of my official duties, I personally placed in the U.S. Mail a sealed envelope bearing the lawful frank of the Court, and properly addressed to each of the persons, parties or attorneys listed below; and

    2.    That the aforementioned envelope(s) contain a copy of the documents known as Rpt & Recomm dated 4/25/05 , which is part of the official records of this case.

Date of Mailing:    4/25/05

Date of Certificate:    4/20/05

SCOTT L. POFF, CLERK

By: _Linda J. Flanders_

**NAME:**

1. Charles W. Walker, Sr., Edward Garland, Donald F. Samuel, Thomas W. Tucker
2. Yolanda Monique Walker, Jerome J. Froelich, Jr.
3. _____
4. _____
5. _____
6. _____
7. _____

Cert/Copy

| | | |
|---|---|---|
| ☐ ☐ | District Judge |
| ☐ ☒ | Magistrate Judge |
| ☐ ☐ | Minutes |
| ☐ ☐ | U.S. Probation |
| ☐ ☐ | U.S. Marshal |
| ☐ ☒ | U.S. Attorney |
| ☐ ☐ | JAG Office |

Cert/Copy

| | | |
|---|---|---|
| ☐ ☐ | Dept. of Justice |
| ☐ ☐ | Dept. of Public Safety |
| ☐ ☐ | Voter Registrar |
| ☐ ☐ | U.S. Court of Appeals |
| ☐ ☐ | Nicole/Debbie |
| ☐ ☐ | Ray Stalvey |
| ☐ ☐ | Cindy Reynolds |